Argued and submitted July 31, conviction on Count 1 and Count 2 for
unauthorized use of a vehicle reversed and remanded; remanded for
resentencing; otherwise affirmed November 14, 2013

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

JOSEPH JAMES LASKY,
*Defendant-Appellant.*

Multnomah County Circuit Court
100330988; A147889

314 P3d 304

David O. Ferry, Deputy Public Defender, argued the cause
for appellant. With him on the brief was Peter Gartlan, Chief
Defender, Office of Public Defense Services.

Karla H. Ferrall, Assistant Attorney General, argued the
cause for respondent. With her on the brief were Ellen F.
Rosenblum, Attorney General, and Anna M. Joyce, Solicitor
General.

Before Schuman, Presiding Judge, and Haselton, Chief
Judge, and Duncan, Judge.

HASELTON, C. J.

## HASELTON, C. J.

After a jury trial, defendant was convicted of unauthorized use of a vehicle (UUV), ORS 164.135; second-degree criminal trespass, ORS 164.245; and third-degree criminal mischief, ORS 164.345, based on an incident in which he removed a truck and trailer from a locked lot where he had consigned the vehicles for sale. Defendant appeals, assigning error to the trial court's allowance of the state's *in limine* motion to exclude a police officer's statement to defendant that he could retrieve those vehicles.[1] The trial court concluded that the statement was not relevant. We conclude that the statement was relevant to defendant's state of mind with respect to the UUV charges and, thus, the trial court erred in excluding it. Accordingly, we reverse and remand defendant's conviction for UUV on Count 1 and Count 2, remand for resentencing, and otherwise affirm.

We review determinations of relevance for errors of law. *State v. Titus*, 328 Or 475, 481, 982 P2d 1133 (1999). The assignment of error in this case pertains to the relevance of certain excluded evidence. Accordingly, we describe the evidence that was introduced at trial, without regard to whether the evidence was favorable to the defense or the state.

Defendant is a car-hauling long-haul trucker. On multiple occasions, defendant had taken his car-hauling truck and trailer for maintenance and repairs to Pacific Coast Truck & Trailer, LLC (Pacific Coast), a repair business and parts seller located in Portland. In August 2006, defendant consigned a 1992 truck and car-hauling trailer at Pacific Coast. Pacific Coast performed mechanical work on the truck to prepare it for sale. The truck and trailer sat on a Pacific Coast lot for over two years and never sold.[2]

In October 2008, defendant and two of his friends went to Pacific Coast to retrieve the truck and trailer during a time when the business was open. The vehicles were parked on a fenced lot behind a locked gate near the Pacific Coast

---

[1] We reject defendant's other assignment of error without further published discussion.

[2] Defendant owned a newer truck and trailer that he used for his car-hauling business.

garage and office. According to defendant, he intended to provide the truck and trailer to one of the two men who had accompanied him. Pacific Coast owner Gary Clark informed defendant that he would not be allowed to remove the vehicles unless and until defendant paid for work that had been completed. Defendant responded that he had not authorized any work, and he did not believe that he owed any money. Ultimately, defendant left without the truck and trailer.

After that encounter, Clark contacted an agent to file a mechanic's lien. Clark also towed an old, inoperable Studebaker station wagon into a position blocking the truck and trailer against the fence so that they could not be removed. Clark then took photographs of all of the vehicles and the locked gate.

At trial, the state successfully sought to exclude evidence that, after defendant and Clark disagreed about defendant taking the vehicles from the lot, defendant purportedly contacted the Portland Police Department and inquired about whether he was entitled to retrieve the vehicles. According to defendant, a police officer informed him that he could lawfully reclaim his truck and trailer from Pacific Coast by "simply driving them off" of the lot. Evidence of that exchange was excluded, and the propriety of that exclusion is the subject of this appeal.

On the evening of October 31, while the business was closed, defendant returned to Pacific Coast, again with two other men. The men removed the lock from the gate, entered the lot, moved the Studebaker, and took the truck and trailer. Defendant parked the vehicles in Toledo, Washington, where a Portland police officer later discovered them in January 2010. In March, the state charged defendant with, *inter alia*, two counts of UUV pertaining to, respectively, the truck and the trailer, second-degree criminal trespass, and third-degree criminal mischief.[3] With respect to the UUV count pertaining to the truck, the state alleged in the indictment, "The said Defendant, on or about October 31, 2008, * * * did unlawfully and knowingly take, operate, exercise control over and ride in a vehicle, to-wit: a

---

[3] Defendant was, additionally, initially charged with two counts of first-degree aggravated theft. The state dismissed those charges before trial.

1992 Peterbuilt [*sic*] truck, without the consent of the owner Pacific Coast Truck & Trailer, LLC[.]" The indictment contained an identical count with respect to the trailer.[4]

After he was indicted, defendant filed a civil suit against Pacific Coast for conversion of the truck and trailer. In his complaint, defendant alleged that,

"[o]n or about October 31, 2008, [defendant] was advised by the Portland police that he could lawfully reclaim his truck and trailer from [Pacific Coast] by simply driving them off [Pacific Coast's] property. [Defendant] did so that evening."

Before the criminal trial, the state moved for a ruling that a portion of defendant's allegation in his conversion complaint (*viz.*, "[Defendant] did so that evening.") was admissible to establish that he in fact took the truck and trailer from Pacific Coast's property. The state argued that the remainder of the statement (the part that was not an admission) was inadmissible hearsay that must be redacted. Defendant responded that the admission would impermissibly be taken out of context if the portion of the statement pertaining to what the police officer told him was omitted.

In ruling on the state's motion, the court reasoned:

"If this had been a statement in this case for which an advantage was sought, then it would have—and then it could have been a judicial admission. If it is a statement in another case, then it is a statement which is admissible because it's a statement of the party opponent, and it can come in as a statement of the party opponent as an admission. [Now] it's something that he can try to walk his way back from with the jury. He can say he really didn't mean [it]. He can say whatever he wants about it; but, he said it, and it comes in as his statement. If he wishes to introduce

---

[4] "[ORS 164.135] does not define or refer to any other statutory definition of the term 'vehicle,' and the Commentary indicates that the drafters intentionally refrained from providing a restrictive definition." *State v. Essig*, 31 Or App 639, 644, 571 P2d 170 (1977), *rev den*, 281 Or 323 (1978) (citing Commentary to Oregon Criminal Code, § 134, 142-43 (1970), explaining that "[t]he first draft of the [UUV] section limited its coverage to 'motor-propelled' vehicles only; however, the Commission believed that the proposal should also protect owners of such things as *trailers*, sailboats and gliders" (emphasis added)). Ultimately, the trial court merged the jury's guilty verdicts on the two UUV counts into a single conviction.

the rest of the statement, he can do that to the extent that it sheds light on it.

"* * * * *

"I will not require the state to put in more than the admission that it's interested in. I would permit the defense to put in more of the related statement to the extent it's relevant—and it is obviously relevant here."

The state subsequently made a separate *in limine* motion to categorically exclude any evidence with respect to "what the police told [defendant] regarding what was appropriate to do as far as retrieving his vehicle." In support of that motion, the state argued:

"I think it's established that ignorance of the law is not a defense to any crime. Whether the ignorance comes from your own ignorance or from your spouse, what they tell you, or from a police officer—it does not matter. And, so, whether the police told [defendant that he could retrieve his vehicles] or not is not relevant. It's hearsay, for one. And, two, it's not relevant. And so I would ask that you not allow any testimony or evidence regarding what someone told [defendant] about whether it was okay for him to retrieve his vehicle."

Defendant remonstrated that the evidence was relevant:

"[DEFENSE COUNSEL]: Well, the problem we've got in a criminal case is, as I understand it, you have to have a joint union of intent and act. And if you don't do an act with criminal intent, then you don't have the requisite *mens rea* to be convicted of the act. *And I think that it all goes to his state of mind when * * * he went and took the vehicle. * * ** [I]f he was told by somebody from the Portland Police Bureau, 'Yeah, this is a civil matter. You can go get your truck if you own it and you don't owe any money. You could go get it.' *Now, if that's his state of mind, then he's not acting with criminal intent.*

"THE COURT: Well, whether he knows it's unlawful or not, he is conscious that he is going to get the truck. Now, what I'm concerned about—isn't there a defense of claim of right?

"[THE STATE]: No, there is not. Honest claim of right only applies to theft charges. It doesn't apply to * * * just UUVs * * * because you're not stealing. * * *

"THE COURT: Suppose there were two identical red Hondas and one you owned and the other you didn't, and you get into the wrong red Honda, not knowing that it was not your car: Could you be charged with [UUV]?

"[THE STATE]: [The defendant] would have to be aware that it was not [his] car.

"* * * * *

"But, honest claim of right only goes to theft charges, and it's clear in the statute that that's a defense. It's not a listed defense for UUV. * * * [I]f it is honest claim of right, I have to disprove that.

"* * * * *

"But to me that's a collateral issue, whether the police told him—whether his ignorance is from what the police told him or his spouse told him, it doesn't matter. Ignorance is not a defense on these charges.

"[DEFENSE COUNSEL]: Your Honor, the very essence of [UUV] is the taking.

"* * * * *

"THE COURT: Well, I think that for your purpose, the concern would be the unauthorized part, not the taking part. * * *

"[DEFENSE COUNSEL]: Well, the reason I mention the taking is because it goes to his intent. First of all, the [UUV] is so close to the theft statute that the defense of claim of right should apply and that his state of mind in saying, 'Hey, can I go get my truck?' 'Well, yeah, you can go get it.' 'Well, it's on another guy's property.' 'Okay. Go get it. Just don't breach the peace[.]' * * * Then his state of mind is relevant. And anything that was told to him would be relevant not for the purpose of whether or not it was right or wrong, but as to whether or not he believed it and his actions were based on that.

"THE COURT: But whether he believed that it was legal or not ordinarily is irrelevant. It's whether he knew that he was doing what he was doing, not whether he knew that what he was doing was proscribed."

(Emphases added.) The court concluded that the evidence was irrelevant and ruled that it would be excluded.

As quoted in detail above, defendant argued that the proffered evidence was relevant to the issue of whether he had acted with the requisite culpable intent. Specifically, he argued that the police officer's statements were relevant to his state of mind with respect to the use of the vehicles as it related to the UUV charges—and only to those charges. Defendant did not articulate any specific theory of relevance with respect to the criminal trespass and criminal mischief charges. The state argued that defendant's subjective belief was irrelevant to his criminal culpability.

After that evidentiary ruling, the state argued at trial that, notwithstanding that defendant held title to the vehicles, Pacific Coast had a superior possessory interest based on a mechanic's lien, and that defendant knew that Pacific Coast had a superior possessory interest in the vehicles. *See* ORS 164.005(4) (providing that "owner" for purposes of UUV means "any person who has a right to possession thereof superior to that of the taker, obtainer or withholder"). The state contended that defendant knew that he did not have consent from Pacific Coast to take the vehicles and, in any event, defendant was not legally entitled to remove the lock or enter the lot.

Defendant remonstrated that he believed that he was the rightful owner of the truck and trailer when he took the vehicles. Defendant testified at trial as follows:

"[T]wo weeks prior [to taking the vehicles], I had called Portland police and explained to them my situation. I had showed them my paperwork, I had showed the lien, I had showed them my consignment agreement, and I had showed them my titles. And I told them that I am the legal owner of this truck."

At that point, the state objected on relevance grounds, and the court sustained the objection. Defendant further argued that he was entitled to use self-help to recover his vehicles from Pacific Coast's property.

The jury found defendant guilty on all counts, and the trial court, after merging the convictions on Counts 1 and 2, entered a judgment of conviction and amended judgment of conviction.

Defendant appeals, assigning error to the court's ruling excluding evidence that a Portland police officer advised him that he could reclaim his truck and trailer from Pacific Coast. Defendant contends that the police officer's statement was relevant to his theory that he had acted under an honest claim of right when he took the vehicles from Pacific Coast's property. Defendant contends that, even if the statutory claim of right defense, ORS 164.035,[5] is limited to theft charges and, thus, is inapplicable to UUV charges, the state was, nevertheless, required to prove every element of the UUV charge, including that defendant knew that he did not have the consent of the owner. "In that context," defendant asserts, "evidence that defendant sought the assistance of the police, and was informed by them that he could lawfully pick up his vehicle, was relevant to his claim that he did *not* know that he did not have the consent of the vehicle's 'owner.'" (Emphasis in original.)

With respect to the criminal trespass and criminal mischief charges, in his brief, defendant simply contends that the trial court erred "when it held that evidence that a police officer told defendant that he could enter on another's property to retrieve his vehicle was irrelevant to his defense against unlawful use of a motor vehicle, criminal trespass, and criminal mischief charges."

On appeal, the state remonstrates that the trial court properly excluded testimony concerning defendant's prior communications with a police officer because the proffered statements were irrelevant.[6] The state reiterates its argument that honest claim of right is not a defense to UUV under Oregon law. The state also contends that defendant failed to preserve the assigned error, because defendant did not make an offer of proof with respect to what the officer told defendant.

---

[5] ORS 164.035(1)(b) provides that, "[i]n a prosecution for theft[,] it is a defense that the defendant acted under an honest claim of right, in that *** [t]he defendant reasonably believed that the defendant was entitled to the property involved or had a right to acquire or dispose of it as the defendant did."

[6] On appeal, the state does not reiterate its contention before the trial court that the statement is inadmissible hearsay. In any event, as we understand it, defendant does not argue that the statement is admissible "to prove the truth of the matter asserted," OEC 801(3), but rather for "the effect on the listener," which is not hearsay. *See, e.g., State v. Hren*, 237 Or App 605, 607, 241 P3d 1168 (2010) ("Statements that are relevant to show their effect on a listener are not hearsay.").

We begin by clarifying which of defendant's contentions are properly before us on appeal, starting with the state's argument with respect to the lack of an offer of proof. "Normally, an offer of proof is required to preserve error when a trial court excludes testimony." *State v. Affeld*, 307 Or 125, 128, 764 P2d 220 (1988). However, a challenge to exclusion of evidence may be preserved, notwithstanding the absence of an offer of proof, if "[t]he questions asked and the arguments presented to the court on the issue were adequate to inform the trial court of the substance of the evidence and its error in excluding it." *Schacher v. Dunne*, 109 Or App 607, 610, 820 P2d 865 (1991), *rev den*, 313 Or 74 (1992); *see also State v. Morgan*, 251 Or App 99, 105, 284 P3d 496 (2012) (same).

Here, the state first brought the "substance of the [disputed] evidence" to the trial court's attention in its initial *in limine* motion seeking to admit that portion of the allegation in defendant's civil conversion complaint that acknowledged that he had removed the truck and trailer, while concurrently seeking to preclude admission of the statement that defendant "was advised by the Portland police that he could lawfully reclaim his truck and trailer from [Pacific Coast] by simply driving them off [Pacific Coast's] property." As noted, the state in a subsequent *in limine* motion sought to categorically exclude the evidence of "what the police told [defendant] regarding what was appropriate to do as far as retrieving his vehicle." Defendant did not offer the evidence; rather, the state broadly characterized the evidence that it sought to have excluded. Given those circumstances, as well as the extensive colloquy quoted above, it is patent that both parties and the trial court knew the source and content of the evidence and understood defendant's argument as to the relevance of the excluded evidence—at least with respect to the *mens rea* element of UUV. Under those circumstances, defendant preserved his appellate challenge, notwithstanding the absence of an explicit offer of proof. *See Peeples v. Lampert*, 345 Or 209, 219-23, 191 P3d 637 (2008) ("Preservation gives a trial court the chance to consider and rule on a contention, thereby possibly avoiding an error altogether or correcting one already made, which in turn may obviate the need for an appeal.").

Nevertheless, some of defendant's appellate contentions are unreviewable as unpreserved because they were not raised before the trial court. In particular, as noted, defendant, while urging the relevance of the excluded evidence as to the UUV charges, raised no argument to the trial court as to whether, or how, that evidence might be relevant to his defense of the criminal trespass and criminal mischief charges. *See* 259 Or App at 313. As a result, the trial court was never alerted to any contention that the evidence was admissible as to those charges. Accordingly, defendant's belated contention that the excluded evidence was also relevant to the criminal trespass and criminal mischief charges is unpreserved; we thus limit our review and the following analysis to the asserted relevance of the excluded evidence to the UUV charges.[7]

We conclude, for reasons that follow, that the excluded evidence was relevant to the theory of defense with respect to the UUV charges. "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." OEC 401. "All relevant evidence is admissible, except as otherwise provided by the Oregon Evidence Code, by the Constitutions of the United States and Oregon, or by Oregon statutory and decisional law. Evidence which is not relevant is not admissible." OEC 402. Evidence having any tendency to make the defendant's theory of the case more likely is relevant. *State v. Beden*, 162 Or App 178, 184, 986 P2d 94 (1999).

We need not decide whether the statutory "honest claim of right" defense, ORS 164.035(1)(b), is limited to prosecutions for theft, ORS 164.015 to 164.055, or also applies to UUV.[8] That is so because we agree with defendant's contention

---

[7] Defendant makes no argument in his brief on appeal that the asserted erroneous exclusion of the disputed evidence somehow impermissibly affected the jury's consideration of the other charges.

[8] *See* Commentary to Criminal Law Revision Commission Proposed Oregon Criminal Code, Final Draft and Report § 133, 140 (July 1970) (noting, in relation to the claim-of-right defense provision, ORS 164.035, that, when a defendant develops evidence on the issue of claim of right, "[w]hat the defendant does by his evidence is to 'raise a reasonable doubt' about the *mens rea* element of the crime, and the burden continues on the state to prove every element of the crime charged

that, in all events, the state must prove *every* element of *every* crime beyond a reasonable doubt. Accordingly, in this case, the state, to establish UUV, was required to prove that defendant acted with a culpable mental state in removing the truck and trailer—and, here, the excluded evidence related to whether defendant acted with the requisite mental state.

The state's burden with respect to the *mens rea* element of UUV is well settled. To obtain a conviction on a UUV charge, the state must prove that the defendant knew that he did not have the owner's consent to use the vehicle. *See, e.g., State v. Bell*, 220 Or App 266, 269, 185 P3d 541 (2008) ("[T]he state was required to prove that defendant *actually knew* that the car was stolen." (Emphasis in original.)); *State ex rel Juv. Dept. v. Mitchell*, 142 Or App 40, 44, 920 P2d 1103 (1996) (reversing juvenile court jurisdiction where the evidence was not sufficient to support a finding that, beyond a reasonable doubt, the child knew that the vehicle in which he had ridden was stolen); *State v. Shuneson*, 132 Or App 283, 287, 888 P2d 90 (1995) (reversing UUV conviction after concluding that "there was insufficient evidence from which a rational trier of fact could find beyond a reasonable doubt that defendant knew that she did not have the owner's consent to ride in the [vehicle]"); *State v. Jordan*, 79 Or App 682, 685, 719 P2d 1327, *rev den*, 301 Or 667 (1986) ("Unauthorized use of a vehicle requires only that the defendant ride in a vehicle that he knows is stolen."). Thus, any evidence that would tend to raise a reasonable doubt about whether, at the time that he took the vehicles, defendant knew that he did not have the owner's consent is relevant to his defense to the UUV charges.

Here, defendant's proffered evidence that a police officer told him that he could lawfully retrieve his vehicles, if they belonged to him, would "hav[e] [a] tendency to make [it] more probable," OEC 401, that, at the time that he took the vehicles, defendant believed that *he* had a possessory interest in the vehicles superior to Pacific Coast's possessory interest and, thus, he was the "owner" of the truck and

---

beyond a reasonable doubt. Unquestionably, a jury would be so instructed in the absence of such a provision in the draft, but it seems preferable to make the Code as comprehensive as possible by spelling it out.").

trailer. That, in turn, would make it "less probable" that defendant knew that he did not have the "owner's" consent— and, concomitantly, "less probable" that he acted with the requisite culpable mental state. To be sure, the jury would be free to disbelieve such evidence. *See State v. Dubois*, 221 Or App 644, 651-52, 191 P3d 670 (2008) (affirming UUV conviction where "the state presented ample evidence from which the jury could have found that * * * [the defendant] knew that her * * * claim of ownership was both fraudulent and illegitimate"). Nevertheless, the excluded evidence was relevant as to whether defendant acted with the requisite culpable intent when he took the vehicles from Pacific Coast's property. Accordingly, the trial court erred in excluding the evidence as irrelevant.

Conviction on Count 1 and Count 2 for unauthorized use of a vehicle reversed and remanded; remanded for resentencing; otherwise affirmed.