Argued and submitted April 22, 2014, reversed and remanded March 18, petition for review allowed June 4, 2015 (357 Or 324)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

ALEN VLADIMIR SIMONOV,
*Defendant-Appellant.*

Umatilla County Circuit Court
CF110325; A151415

346 P3d 589

Lindsey Burrows, Deputy Public Defender, argued the cause for appellant. With her on the briefs was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Michael R. Salvas, Assistant Attorney General, argued the cause for respondent. With him on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Before Sercombe, Presiding Judge, and Hadlock, Judge, and Tookey, Judge.*

SERCOMBE, P. J.

---

* Tookey, J., did not participate in oral argument, but subsequently listened to the recording of argument.

**SERCOMBE, P. J.**

Defendant appeals a judgment of conviction for unauthorized use of a vehicle (UUV). A person commits UUV when he "takes, operates, exercises control over, rides in or otherwise uses another's vehicle * * * without consent of the owner." ORS 164.135(1)(a). At trial, defendant requested jury instructions requiring the jury to find that he *knew* that he was using the car without the owner's consent, but the trial court instead instructed the jury that it could convict if it found that defendant was *criminally negligent* with regard to whether he had the consent of the owner. On appeal, defendant argues that that instruction conflicts with several cases where this court has construed the UUV statute to require that the person using the vehicle knows that he lacks the owner's consent, and he contends that reversal is necessary because that deficiency in the instruction affected the verdict. For the reasons below, we agree, and, accordingly, reverse and remand.

We summarize the competing evidence presented to the jury, keeping in mind that, because defendant has challenged the "trial court's refusal to give a requested jury instruction, we view the facts in the light most favorable to giving that instruction." *State v. Wolf*, 260 Or App 414, 416-17, 317 P3d 377 (2013); *see also State v. Naudain*, 254 Or App 1, 2, 292 P3d 623 (2012), *rev den*, 353 Or 788 (2013) ("Because defendant is challenging the trial court's jury instructions, and not the sufficiency of the evidence supporting his conviction, we review all pertinent parts of the record."). At trial, the state presented evidence that defendant and his brother, Vadim, talked to their neighbor, Goodnow, about purchasing a 1983 Datsun pickup truck. Goodnow testified that defendant asked her if he could take the truck to a car wash in Pendleton to check the engine for an oil leak, and she agreed. Goodnow watched defendant pick his brother up and drive away. Twenty minutes later, when they had not returned, Goodnow called defendant, and he told her that they had taken the truck to a mechanic in Hermiston. Goodnow told defendant to return the truck. When defendant did not return with his brother and did not answer Goodnow's calls, she reported the truck stolen. Defendant later left a voicemail message stating,

"I'm in Portland. We're bringing the truck back." Goodnow saw defendant and Vadim pull the truck into her driveway several hours later.

Defendant presented evidence that Vadim, not defendant, received permission from Goodnow to borrow the truck and that defendant did not know that he and his brother used the car beyond Goodnow's permission. Vadim testified that he talked to Goodnow about taking the truck to a mechanic, but defendant was not present for the conversation and did not know what Goodnow discussed with Vadim. Defendant and Vadim drove the truck to a mechanic in Hermiston, and they stopped at a gas station on the way. The truck failed to start, so defendant called his girlfriend to have her pick him up at the gas station. The mechanic from Hermiston met Vadim at the station and got the truck running. Vadim left defendant at the gas station, drove to Portland to deliver money to his wife, and picked defendant up from his girlfriend's house in Pendleton on his way back to Goodnow's house.

Defendant requested jury instructions that required the jury to find that he knew he did not have the owner's consent to use the truck:

> "Oregon law provides that a person commits the crime of unauthorized use of a vehicle when the person knowingly rides [in] another's vehicle without the consent of the owner.
>
> "In this case, to establish the crime of unauthorized use of a vehicle, the state must prove beyond a reasonable doubt the following four elements:
>
> "* * * * *
>
> "(4) [Defendant] knew the use of [the] [1983] Datsun Pickup was without the consent of the owner."

Defendant also requested an instruction that, "[w]hen used in the phrase [defendant] knew the use of [the] vehicle was without the consent of the owner, 'knowingly' or 'with knowledge' means that the person acts with an awareness that he had [actual] knowledge [of] the lack of consent of the owner."

After discussing the jury instructions with defense counsel and the prosecutor in chambers, the trial court instructed the jury that

"Oregon law * * * provides that a person commits the crime of unauthorized use of a vehicle when a person unlawfully and with criminal negligence takes, operates, exercises control over, rides in or otherwise uses another's vehicle without the consent of the owner.

"In this case, to establish the crime of unauthorized use of a vehicle, the State must prove beyond a reasonable doubt * * * [that defendant] failed to be aware of a substantial and unjustifiable risk that he did not have the consent of the owner.

"A person acts with criminal negligence if that person fails to be aware of a substantial and unjustifiable risk that a particular result will occur or a particular circumstance exists.

"* * * * *

"When used in the phrase, the defendant * * * did unlawfully and with criminal negligence take, operate, exercise control over, ride in and otherwise use a vehicle, a 1983 Datsun pickup[,] without the consent of the owner * * *, criminal negligence or criminally negligent means that the person fails to be aware of a substantial and unjustifiable risk that the 1983 Datsun pickup was being operated, controlled, [ridden] in or otherwise used without the consent of the owner."

Defendant took exception to the trial court's instruction as to the mental state for UUV:

"I take exception to the Court taking out the knowing language and putting in the criminal negligence language. I just didn't think it fit these facts.

"I take exception to the Court's failure to give knowing and with knowledge."

The jury found defendant guilty of UUV. On appeal, defendant argues that the trial court erred in failing to give his requested instruction and by instructing the jury that

it could find defendant guilty of UUV if it concluded that defendant "failed to be aware of a substantial and unjustifiable risk that he did not have the consent of the owner."

The state initially responds that defendant's arguments are not preserved for our review. To preserve an argument for appellate review, "a party must provide the trial court with an explanation of his or her objection that is specific enough to ensure that the court can identify its alleged error with enough clarity to permit it to consider and correct the error immediately, if correction is warranted." *State v. Wyatt*, 331 Or 335, 343, 15 P3d 22 (2000).[1] Here, defendant proposed an instruction on the UUV charge requiring the jury to find that he "knew the use of [the vehicle] was without the consent of the owner," and he took "exception to the Court's failure to give [the] knowing and with knowledge" instructions. Those actions, taken together, mirror the straightforward argument defendant makes on appeal.

The state maintains that defendant's appellate argument is not preserved because defense counsel also commented that the criminal negligence instruction "didn't *** fit these facts," which, in the state's view, "implied that defendant believed the *evidence* did not support a jury instruction on criminal negligence, not that the jury instruction on criminal negligence incorrectly stated the law." (Emphasis in original.) Although defendant could have refined his position by specifying that the given instruction did not correctly state the law, defendant sufficiently communicated that the jury instructions failed to perform their core function—to accurately describe the law—when he first proposed an instruction requiring that defendant knew that he did not have the vehicle owner's consent and when he later specifically objected to the court's failure to give that instruction. *See State v. Davis*, 265 Or App 179, 183-84, 335

---

[1] The state also relies on ORCP 59 H, which requires a party challenging a jury instruction to "state with particularity any point of exception to the trial judge." We reject any argument specific to ORCP 59 H in light of the Supreme Court's opinion in *State v. Vanornum*, 354 Or 614, 631, 317 P3d 889 (2013), which explained that "ORCP 59 H does not set the standard by which the appellate courts will determine if a claim of instructional error is preserved." *See State v. Bistrika*, 261 Or App 710, 726, 322 P3d 583, *rev den*, 356 Or 397 (2014) (rejecting preservation argument premised on ORCP 59 H).

P3d 1266 (2014) (concluding that the defendant preserved his argument that a jury instruction violated the state and federal constitutions, because, even though he did not cite the specific constitutional provisions at issue, his exception to the instructions sufficiently communicated that those provisions were the basis for his objection); *see also State v. Vanornum*, 354 Or 614, 632 n 11, 317 P3d 889 (2013) ("[T]he terms of a requested, but refused, instruction may sometimes go a long way to putting a trial court on notice of the deficiency in the trial court's instructions if the requested instruction is not given.").

We turn to the merits. Our task is to determine if "the instruction at issue probably created an erroneous impression of law in the minds of the jurors that affected the outcome of the case." *Watson v. Meltzer*, 247 Or App 558, 564, 270 P3d 289 (2011), *rev den*, 352 Or 266 (2012). In considering the UUV statute, we have repeatedly held that the state must prove that the defendant knew that he did not have the owner's consent to use the vehicle. As we explained in *State v. Lasky*, 259 Or App 307, 317, 314 P3d 304 (2013), "[t]he state's burden with respect to the *mens rea* element of UUV is well settled. To obtain a conviction on a UUV charge, the state must prove that the defendant knew that he did not have the owner's consent to use the vehicle." *See also State v. Gibson*, 268 Or App 428, 430, 342 P3d 168 (2015) (stating, in a case where the defendant argued that police did not have probable cause to arrest for UUV, that, under ORS 164.135(1), the defendant "must know that he or she does not have the owner's consent"); *State v. Ayvazov*, 246 Or App 641, 646, 267 P3d 196 (2011), *rev den*, 351 Or 675 (2012) ("'To convict a person under ORS 164.135(1) for riding in a stolen vehicle, the state must prove that the person knew that the vehicle was stolen at the time he or she was a passenger.'" (quoting *State v. Rayburn*, 246 Or App 486, 489-90, 266 P3d 156 (2011), *rev den*, 351 Or 675 (2012))); *State ex rel Juv. Dept. v. Hal*, 168 Or App 76, 78, 7 P3d 535 (2000) ("To prove the allegation of unauthorized use of a vehicle, the state must prove that youth knew that he was using the vehicle without the owner's consent."); *State ex rel Juv. Dept. v. Mitchell*, 142 Or App 40, 43, 920 P2d 1103 (1996) ("A person charged with unauthorized use must know that

the vehicle was stolen at the time the person was a passenger."); *State v. Shuneson*, 132 Or App 283, 286-87, 888 P2d 90 (1995) (reversing trial court's denial of the defendant's motion for judgment of acquittal because the state presented insufficient evidence that the defendant knew she did not have the owner's consent to ride in the vehicle); *State v. Jordan*, 79 Or App 682, 685, 719 P2d 1327, *rev den*, 301 Or 667 (1986) ("Unauthorized use of a vehicle requires only that the defendant ride in a vehicle that he knows is stolen. ORS 164.135(1)(a).").

The state argues that those cases do not control our construction of the UUV statute here because they "proceeded on allegations that those defendants acted with knowledge," and none of them "held that ORS 164.135 requires that the state must *always* prove at least a 'knowing' mental state when prosecuting UUV." (Emphasis in original.) In the state's view, the charging instrument in each case, rather than the statutory text, guided our conclusion that the state was required to prove that the defendant knew that he did not have the owner's consent to use the vehicle to obtain a conviction on a UUV charge. It follows, according to the state, that because the indictment here alleged criminal negligence with respect to defendant's awareness of the owner's consent, the criminal negligence jury instruction on that charge was permissible.

We disagree. First, as defendant correctly notes, in several cases where we have considered the UUV statute, the charging instrument was not relevant to the question before the court. In *Gibson*, *Ayvazov*, and *Rayburn*, for example, the defendants argued that police lacked probable cause to arrest for UUV, and the deciding question—whether an officer has an objective basis for believing that an offense has been committed—did not depend on the mental state that the state ultimately alleged. Second, in cases considering the sufficiency of the evidence, like *Shuneson*, where the charging instrument might have been relevant to the analysis, we did not tailor our construction of the UUV statute to the charging instrument in the case before us; *Shuneson*, for example, does not mention how the state charged UUV. Third, although we sometimes relied on the charging instrument in determining what the state was required to prove

on a UUV charge,[2] we have repeatedly held that the *UUV statute* requires the state to prove the defendant's knowledge as to lack of consent in cases where the charging instrument was never mentioned or was otherwise not relevant to the question on appeal. In short, our opinions considering the UUV statute are not as limited as the state suggests. To endorse the state's position that the UUV statute does not require the state to show that defendant knew that he lacked consent, we would have to overrule precedent.

But "we do not lightly overrule our own statutory interpretations." *Aguilar v. Washington County*, 201 Or App 640, 648, 120 P3d 514 (2005), *rev den*, 340 Or 34 (2006). In the face of binding precedent as to the construction of a statute, we adhere to that construction unless we are shown that it is "plainly wrong." *Id.* And the state, as the party challenging our construction of the UUV statute, must affirmatively demonstrate why that construction is plainly wrong. *See Hostetter v. Board of Parole and Post-Prison Supervision*, 255 Or App 328, 333-38, 296 P3d 664, *rev den*, 353 Or 747 (2013) (rejecting previous interpretation of administrative rules in an earlier decision where the petitioner requested us to overrule that decision and demonstrated why our earlier interpretation was plainly wrong). The state has not taken up that effort here. Indeed, the state does not engage in any statutory analysis—or cite any case law or legislative history—as part of an effort to affirmatively establish what the UUV statute requires or demonstrate that our prior statutory construction is plainly wrong.[3] Where the state has not

---

[2] In two UUV cases, we relied on the charging instrument as the basis for our conclusion that the state was required to prove that the defendant knew the vehicle was stolen. *See State v. Bell*, 220 Or App 266, 269, 185 P3d 541 (2008) (noting that "[t]he parties agree[d] that the state was required to prove that [the] defendant acted 'knowingly'" and reasoning that, "because the state alleged in its indictment that [the] defendant acted 'knowingly,' the state was required to prove that defendant *actually knew* that the car was stolen" (emphasis in original)); *State v. Shipe*, 264 Or App 391, 395, 332 P3d 334 (2014) (citing *Bell* and noting that the information charged "knowing" *mens rea* for UUV).

[3] Defendant, in a reply brief, provides the outline for that analysis. Defendant observes that a *mens rea* of intentional or knowing—but not criminal negligence— may apply to a conduct element of the crime. *See State v. Crosby*, 342 Or 419, 428, 154 P3d 97 (2007) (describing mental states and their application to three different types of material elements: conduct, circumstances, or results); ORS 161.085(8) ("[k]nowingly" involves mental state as to conduct or circumstance, but not result); ORS 161.085(10) ("[c]riminal [n]egligence" involves mental state

advanced that statutory analysis on appeal, we will not do so on the state's behalf in order to overrule several of our cases. *See State v. Copeland*, 247 Or App 362, 368-70, 270 P3d 313 (2011), *aff'd*, 353 Or 816, 306 P3d 610 (2013) (adhering to our controlling opinions after rejecting the defendant's attempt to read limitations into those opinions, where the defendant had "not urged us to overrule those holdings, much less demonstrated that they were 'plainly wrong'").

In sum, the state's only argument on appeal is that our cases do not stand for the proposition that the UUV statute requires the state to "prove that the defendant knew that he did not have the owner's consent to use the vehicle." Because we reject that argument and adhere to that construction of the UUV statute, we conclude that the trial court erred in instructing the jury on UUV without requiring it to find that defendant knew he did not have the owner's consent to use the vehicle.

We further conclude that that error requires reversal in this case because the instruction "created an erroneous impression of the law that, if the jury had believed defendant's version of the facts, would have affected the outcome of the case." *State v. Pine*, 336 Or 194, 210, 82 P3d 130 (2003). That is so because, even if the jury believed that defendant did not *know* that he and Vadim were using the truck beyond the scope of the owner's consent, the jury nonetheless could have convicted defendant under the court's instructions if it concluded that he failed to be aware of a substantial and unjustifiable risk that Vadim was acting without the owner's consent. *See State v. Hill*, 298 Or 270, 279-80, 692 P2d 100 (1984) (reversing where the instruction given required a mental state of gross or criminal negligence, but the statute required a higher mental state of recklessness and thus "may have led the jury to convict [the] defendant upon a finding of lesser culpability than is required by statute"). We therefore reverse and remand defendant's conviction for UUV.

Reversed and remanded.

as to result or circumstance, but not conduct). And defendant argues that "without consent of the owner" is part of the conduct element of the UUV statute and, thus, our cases have correctly held that that statute requires a showing that defendant knew that he lacked consent. Those arguments, however, go far beyond the state's contentions on appeal, and we need not explore them in this case.